UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FERNANDO CELSO ALVAREZ GALLIMORE, (A 203-753-705),

Petitioner,

v.

WARDEN,

Respondent.

No. 1:26-cv-04813-DAD-CKD

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner, a native and citizen of Cuba, entered the United States without inspection on May 15, 2019. ECF No. 5-1 at 1, 2. U.S. Customs and Border Patrol ("CBP") agents apprehended Petitioner and initially processed him for expedited removal and detained him under INA § 235(b)(1), 8 U.S.C. § 1225(b)(1). ECF No. 5 at 2. Approximately three months later, Petitioner demonstrated that he had a credible fear of return to Cuba. Id. As a result, Petitioner was released from custody and issued a Notice to Appear in removal proceedings. [1] Id.; ECF No. 5-2. On

[1] The District Judge's order dismissing Petitioner's first application before the Southern District of Florida (see p. 2, line 4, infra) states that Petitioner was released after being granted bond by an Immigration Judge

October 23, 2025, over six years after Petitioner's release, ICE detained Petitioner when he presented himself to an ICE office as directed.[2] ECF No. 5-1 at 2. Petitioner was first detained in Florida then transferred to the Mesa Verde Detention Center in this district. ECF No. 1 at 6.

While detained in Florida, Petitioner filed a habeas petition in the Southern District of Florida. See Alvarez Gallimore v. Warden, Krome North SPC, et al., No. 1:26-cv-21696-CMA (S.D. Fla. Mar. 14, 2026). District Judge Cecilia Altonaga dismissed the petition, finding the Court did not have subject matter jurisdiction.[3] Id; ECF No. 5-3. On June 23, 2026, while detained within this district, Petitioner filed the instant petition for writ of habeas corpus, claiming that prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. ECF No. 1. Respondent claims that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), which they argue is constitutional even as applied to Petitioner. ECF No. 5. Respondent also argues that Petitioner's claim is a substantive, rather than procedural, due process claim. Id.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth

---

pursuant to 8 C.F.R. §236.1(c). See Alvarez Gallimore v. Warden, Krome North SPC, et al., No. 1:26-cv-21696-CMA (S.D. Fla. Mar. 14, 2026). See also ECF No. 5-3 at 2. Neither Petitioner, Respondent, nor Respondent's submitted documents make any mention of a bond hearing. On the contrary, Respondent states "after [Petitioner] established a credible fear, he was issued a Notice to Appear and released." ECF No. 5 at 2. The undersigned makes findings of fact based on Respondent's statements and submitted evidence, rather than the statement in the prior order.

[2] The order dismissing Petitioner's application before the Southern District of Florida states that ICE officers detained and released Petitioner after encountering him at a local jail after an arrest for armed robbery. Alvarez Gallimore v. Warden, Krome North SPC, et al., No. 1:26-cv-21696-CMA (S.D. Fla. Mar. 14, 2026). See also ECF No. 5-3 at 2. Neither Petitioner nor Respondent mentions such encounter. Respondent's Form I-213 notes arrests in 2021 and 2024 for larceny and robbery – neither of which resulted in convictions – but does not indicate that ICE encountered Petitioner at a county jail after either arrest. ECF No. 5-1. The undersigned makes findings of fact based on Respondent's statements and submitted evidence, rather than the unsubstantiated statement in the prior order.

[3] Respondents do not contend that this Court lacks subject matter jurisdiction over the instant petition filed in this district.

Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment."). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private

interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

### B. Statutory Immigration Framework

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

The statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3. Such parole, however, "shall not be regarded as an admission of the [non-citizen]." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id.

## III. Analysis

### A. Petitioner Not Lawfully Detained Under 8 U.S.C. § 1225(b)(1)(B)(ii)

Respondent contends that Petitioner was re-detained pursuant to 8 U.S.C. §

1225(b)(1)(B)(ii), which requires detention of noncitizens who have demonstrated a credible fear of return, pending final adjudication of their asylum applications. However, § 1225(b)(1) explicitly applies to "*aliens arriving* in the United States and certain other aliens *who have not been admitted or paroled"* (emphasis added).

Though the record is not entirely clear in this regard, the evidence suggests that Petitioner *has* been paroled. On or about August 17, 2019, after Petitioner passed a credible fear interview, ICE issued Petitioner a Notice to Appear and released him. ECF No. 5-2; ECF No. 5 at 2. The statutory mechanism for release from detention for an asylum applicant, like Petitioner, who was apprehended at the border is parole pursuant to 8 U.S.C. § 1182(d)(5)(A). See also 8 C.F.R §§ 212.5(b), 235.3. Absent evidence that Petitioner was released under any other authority,[4] the undersigned bases this analysis on the presumption that Petitioner was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A). This court has previously found that a noncitizen paroled under § 1182(d)(5)(A) cannot be legally detained pursuant to § 1225(b)(1)(B)(ii). Singh v. Albarran, No. 1:25-cv-01821-DAD-SCR (HC), 2025 WL 3640678, at 2 (E.D. Cal. Dec. 16, 2025) (citing N.A. v. Larose, No. 25-cv-02384-RSH-BLM, 2025 WL 2841989, at 6 (S.D. Cal. Oct. 7, 2025)).

Moreover, Petitioner is not – and should not be - classified as an "arriving alien." See ECF No. 5-2 at 1 (designating Petitioner as "an alien present in the United States who has not been admitted or paroled" rather than "an arriving alien"). As stated in Amaya-Quinteros v. Corecivic, Inc., No. 1:25-cv-1672, 2025 WL 3687642, at 10-11 (E.D. Cal. Dec. 19, 2025), "under the plain text, for § 1225(b)(1) to apply, a noncitizen must be actively coming or attempting to come *into* the United States." By the time Petitioner was detained, he had already been paroled into the United States and present for over six years. Based on a plain reading of the statute and the reasoning in Singh and Amaya-Quinteros, the undersigned finds that Petitioner was not properly detained under § 1225(b)(1) because he was paroled and not an arriving alien.

[4] As discussed in FN 1 the undersigned does not adopt the District Judge's findings of fact in Alvarez Gallimore v. Warden, Krome North SPC related to bond or release, as they are unsubstantiated and conflict with both parties' statements and submitted evidence.

**B. Detention Violated Due Process**

In reviewing Petitioner's due process challenge, the Court turns first to the question of whether Petitioner has a protected liberty interest from detention after parole. This court has joined several district courts within the Ninth Circuit in finding that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to due process protections. See e.g. Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3–5 (E.D. Cal. Dec. 9, 2025) ("Petitioner's release pursuant to § 1182(d)(5) necessarily required a determination that he posed neither 'a security risk nor a risk of absconding.' 8 C.F.R. § 212.5(b). Once released, a parolee acquires an interest in his or her continued liberty"); Omer G. G. v. Kaiser, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, at *5, 9 (E.D. Cal. Nov. 22, 2025) (determining that the petitioner was entitled to a post-deprivation bond hearing after he was initially released pursuant to § 1182(d)(5)(A) and later re-detained); Salazar v. Casey, No. 25-cv-02784-JLS-VET, 2025 WL 3063629, at *4, 6 (S.D. Cal. Nov. 3, 2025) (ordering the petitioner released from custody subject to the conditions of her preexisting parole under § 1182(d)(5)(A), and requiring notice and a hearing prior to her re-detention); Noori v. LaRose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *9–10, 14 (S.D. Cal. Oct. 1, 2025) (enjoining re-detention of the petitioner during the pendency of his removal proceedings without leave of the court, when the petitioner was previously released on humanitarian parole pursuant to § 1182(d)(5)(A)); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687, at *9–11, 14 (D. Nev. Nov. 3, 2025) (ordering the petitioner's immediate release following re-detention when he was initially released pursuant to § 1182(d)(5)(A)). Petitioner therefore has a protected liberty interest.

Having so found, the Court applies the Mathews v. Eldridge, 424 U.S. 319 (1976), framework to determine whether due process required a pre-detention bond hearing before a neutral adjudicator.

**1. Private interest**

Turning to the first factor in Mathews, Petitioner has a strong liberty interest in avoiding detention without a hearing after having been previously released on parole. "Freedom from

imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Petitioner was released for over six years prior to his re-detention. During that time, Petitioner applied for asylum and withholding of removal, a necessary preliminary step in seeking long-term security in the United States. ECF No. 1 at 6. Petitioner's time in the United States and application for asylum support his private liberty interest. See Salazar, 2025 WL 3063629, at *4 ("Petitioner has an interest in remaining with her family, seeking counseling, and attending hearings to seek a visa."); Noori, 2025 WL 2800149, at *10 ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States."). For these reasons, the first Mathews factor tilts in favor of Petitioner.

**2. Risk of erroneous deprivation**

Second, the risk of erroneous deprivation is high when, as here, parole is revoked without reason. See Salazar, 2025 WL 3063629, at *4 (noting there was no evidence that the petitioner presented a danger to the community or a flight risk). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G., 2025 WL 3254999, at *7 (quoting Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). Petitioner's release necessarily required a determination that he posed neither a danger to public safety nor a flight risk. 8 C.F.R. § 212.5(b); Noori, 2025 WL 2800149, at *3. Respondents do not argue that Petitioner is now a danger to public safety or a flight risk. "Where, as here, '[the petitioner] has not received any bond or custody ... hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (quoting Singh v. Andrews, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Additional procedural safeguards, such as a pre-detention hearing would help ensure that any future detention is lawful. See Pinchi, 792 F. Supp. 3d at 1035. This factor under Mathews thus also favors Petitioner.

**3. Government's interest**

Under this factor, the Court weighs the government's interest, "including the function

involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. "[T]he government has a strong interest in effecting removal, and in protecting the public from danger." Maksim v. Annex, No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (citations omitted). "[H]owever, the key government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Id. (citation and quotation omitted). Thus, "[p]roviding a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the [non-citizen] represents a flight risk or danger to the community." Jimenez v. Wolf, No. 19-CV-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)); see also Velasco-Lopez v. Decker, 978 F.3d 842, 854 (2d Cir. 2020). Therefore, the government's interest in detaining Petitioner without adequate reasoning and a pre-detention hearing is low. If Respondents wish to re-detain Petitioner, they need only provide him with written notice and a hearing before a neutral adjudicator. See Pinchi, 792 F. Supp. 3d at 1036 ("Indeed, it is likely that the cost to the government of detaining [Petitioner] pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing."). A pre-detention bond hearing would involve a minimal fiscal and administrative burden. This factor therefore also weighs in favor of Petitioner.

The three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in detention without inquiry into whether Petitioner represents a flight risk or danger to the community. The undersigned thus finds that Petitioner's detention violated his Fifth Amendment due process rights.

**IV. Recommendations**

Accordingly, IT IS HEREBY RECOMMENDED that

1. Petitioner's application for a writ of habeas corpus be GRANTED;
2. Respondent be ORDERED to immediately RELEASE Petitioner from custody with the same conditions to which Petitioner was subject prior to his detention in October 2025;

a. At the time of release, Respondent be ordered return all of Petitioner's property and documents;

b. The Clerk of Court be directed to serve a copy of any release order to Mesa Verde Detention Center;

3. Respondents be ENJOINED AND RESTRAINED from re-detaining Petitioner for any purpose, absent exigent circumstances, without providing Petitioner at least 7 days' written notice and a pre-detention hearing before a neutral adjudicator where Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or flight risk;

4. The order not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal; and

5. The Clerk of Court be directed to enter judgment and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 30, 2026

Carolyn K. Delaney

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 alva4813.imm.frs